9523

LESESNE v. CHEVES ET AL.

(90 S. E. 37.)

1. TRUSTS—ENFORCEMENT—EQUITY JURISDICTION.—A suit brought by one of the chief beneficiaries under a will against the trustees under the will, raising the questions as to the trustees' management of the estate and as to the construction to be placed on the will with reference to the trustees' duties, was a suit of which a Court of equity has jurisdiction, and in which it was its duty to act when invoked.

2. TRUSTS—DUTY OF TRUSTEES—PAYMENT OF INCOME.—Under a will whereby the testatrix intended to make ample provision for the support of her great-nieces, prior to and after the death of a life tenant, and under which they were to receive, as a first charge on the income, $2,900 a year, and where the estate was and had always been sufficiently reasonable to yield such income, and the trustees had had sufficient time to put the estate on an income yielding basis, it was their duty to provide such income, and where for five years the beneficiaries had not received the income, partly because an amount derived from income-bearing securities which should have come out of the sale of unimproved lands had been invested in unproductive lots, there was a failure in the performance of the trust.

3. WILLS—CONSTRUCTION—INTENTION OF TESTATOR.—In the construction of wills, the intention of the testator must be given effect, if possible.

4. TRUSTS—ADMINISTRATION—LIABILITY OF TRUSTEES.—Trustees under a will providing an income of $2,900 a year for the testatrix's great-nieces, who during the first four years of their management of the estate were enabled to pay approximately the full income, were not further liable, but, as to years in which the estate was capable of earning the trust fund each year but the net income was less than that amount, they would be decreed to pay to the beneficiaries the difference.

5. TRUSTS—INVESTMENTS—STOCK.—A trustee should not invest trust property in stocks.

6. TRUSTS — PAYMENT OF INCOME — SUIT—JUDGMENT.—Where trustees under a will giving to the great-nieces of the testatrix the sum of $2,900 a year had not realized sufficient net income to make such payment, they would be ordered to sell sufficient of the lands belonging to the trust estate to create a fund which, when invested in proper interest-bearing securities, would yield a sufficient income to enable them to pay the amount given to the beneficiaries.

Before SEASE, J., Charleston, April, 1915.    Affirmed.

Suit in equity by Miss Harriott M. Lesesne against Langdon Cheves and Henry C. Cheves, individually and as trustees under the will of Harriott K. Middleton, deceased, and Alice Middleton, and against Louise G. Logan and others. Judgment for plaintiff, and the trustees and defendant, Alice Middleton, appeal.

The decree of the Circuit Court was as follows:

This is a suit in equity brought by Miss Harriott M. Lesesne, one of the chief beneficiaries under the will of Miss Harriott K. Middleton, against the trustees under the will. The plaintiff is a great-niece of the testatrix, and resided with her for many years and up to the time of her death, and the trustees are the nephews of the testatrix.

The trust estate involved is of considerable value, and the questions raised are as to the management of the estate by the trustees and as to the construction to be placed on the will with reference to the duties of the trustees. It is not necessary for me to review in any detail the testimony which has been produced. The relations between the plaintiff and

28—S. C. 105.

her aunt were close and tender, and the plaintiff makes no charge against the trustees of either fraud or bad faith.

The case is one which a Court of equity has jurisdiction of, and in which it is its duty to act when appealed to. Perry on Trusts (3d ed.), secs. 508, 511; Pomeroy's Eq. Jur., secs. 1070, 1071; *Perroneau* v. *Perroneau,* 1 S. C. Eq. (1 DeS.) 521; *Bound* v. *Railroad* (C. C.) 50 Fed. 864; *Singleton* v. *Lowndes,* 9 S. C. 465; *Snelling* v. *McCreary,* 35 S. C. Eq. (14 Rich. Eq.) 291.

The main questions in the case are: First. Has the management of the trust estate been such as to carry out the purposes of the testatrix? Second. What remedies is the plaintiff entitled to, if the trust has not been properly administered?

2, 3 The primary intention of the testatrix here was evidently to make ample and positive provision for the support and future welfare of her great-nieces, Miss Lesesne and Mrs. Logan, both prior to and after the death of Miss Alice Middleton.

During the lifetime of the life tenant they were to receive as a first charge on the income $2,900, and it appears from the evidence that the estate is and has been always sufficient reasonably to yield this income, and an abundance of time has been allowed the trustees to put the estate on an income-yielding basis. It was, therefore, the duty of the trustees to provide it. It is one of the canons of the law that in the construction of wills, the intention of a testator or testatrix must be given effect, if possible. *Walker* v. *Alverson,* 87 S. C. 55, 68 S. E. 966, 30 L. R. A. (N. S.) 115; *Smith* v. *Bell,* 6 Pet. 68, 8 L. Ed. 322; *Colton* v. *Colton,* 127 U. S. 309, 8 Sup. Ct. 1164, 32 L. Ed. 138.

The testimony in the case satisfies me that the intentions of the testatrix are not being carried out by the trustees in the manner intended, and that for the past five years, at least, the plaintiff has not received the income she is entitled to and should have received; it is admitted by the testimony

that $5,200 derived from income-bearing securities which
should have come out of the sale of unimproved lands has
been invested in the absolutely unproductive boulevard lots.

The testimony of the trustees practically concedes the con-
tention of the plaintiff that an early sale of some of the real
estate is essential, and under all of the circumstances of the
case as revealed by the testimony, I feel that the ends of jus-
tice will best be attained by requiring the sales to be made by
the master of this Court, and under the supervision of the
Court.    Two further questions as to the management of the
estate are raised by plaintiff, which must be considered.

It appears that during the period of the trusteeship from
January 1, 1906, to December 31, 1914, the Misses Lesesne
received from the trustees the total sum of $17,090.30.  Their
contention is that the estate was amply sufficient to
earn the full income provided for them under the
will, and that with due consideration of the terms of
the will and with proper management on the part of the trus-
tees, the full income would have been paid them.    The full
income, $2,900, for this period would have amounted to
$26,100, showing a difference of $9,009.70 between what
they did receive and what the testatrix intended them to
receive during this period.    This amount the plaintiff and
her sister claim should now be decreed to be paid them out
of the estate.    It appears to the Court that this claim is
entitled to consideration.

The management of the trust estate falls naturally into
two periods—that period from the commencement of the
trust to the failure of rice planting in 1910, and the period
from 1910 to the present time.    In the first period, the rice-
planting operations enabled the trustees to pay the full
amount of the income for several years, and approximately
the full income during these years.    Under the view which
I take of the rice-planting operations, the trustees are enti-
tled to apply the earnings from these operations to the
income of the trust estate, and the situation, therefore, is

that the beneficiaries should be satisfied with the income received by them during this period.

The second period, however, from March 11, 1910, to December 31, 1914, presents a different aspect. Outside of the income from rice planting, it is undisputed that at no time did the total net income amount to more than $1,500 to $1,800, and there is no reason apparent why the Misses Lesesne should lose entirely the income they should have received during this period under the circumstances as presented in this case.

The estate was and is amply capable of earning far more than $2,900 a year. The other beneficiary, Miss Alice Middleton, appears from the testimony to have ample means for her own support, and moreover, is entirely satisfied with the management which has yielded her practically nothing during this period of the trusteeship. It seems proper, therefore, that provision should be made in this decree for the payment to the Misses Lesesne of their lost income during this period. The case presents some curious aspects.

There seems to have been a constant unwillingness to sell lands, or, in fact, to part with any of the property coming into the hands of the trustees; and some of the investments of the personal securities in stocks have resulted in a total loss. The trustee who testified is a lawyer, and admitted that he recognized that a trustee should not invest trust property in stocks. It seems to the Court that any cotton mill stock investments should be disposed of by the trustees at their earliest opportunity.

No conscious misconduct or wilful wrong is charged to the trustees, and the Court finds nothing in the testimony upon which any such charge could be based. On the contrary, the Court was much impressed by the testimony of Mr. Langdon Cheves, the only trustee examined, and by the earnestness with which he testified. While the Court is constrained to find that equity demands its interference here and that the plaintiff is entitled to redress, whatever wrongs

have been committed are clearly errors in judgment and errors based on a misconception of their duties under the will and under the law, and in nowise reflects on the personal integrity of either of the trustees. The Court feels that this statement should be made without reservation, in justice to the trustees. Nevertheless, the Court cannot approve of the actions of the trustees in the particulars mentioned.

With reference to the so-called "Planting Fund," whereby it is alleged that the sum of $1,000 was deducted from the income of the estate as is set forth in the sixth paragraph of the complaint, I am not now prepared to pass on this transaction, and shall, therefore, refer it to the master for further investigation and for a report both on the law and on the facts.

It is, therefore, ordered, adjudged and decreed, that the defendants, Langdon Cheves and Henry C. Cheves, the trustees under the will of Harriott K. Middleton, do, prior to the 15th day of December, 1915, sell sufficient of the lands belonging to the trust estate, or of the undivided interests which said trust estate has in any lands, to yield a fund which when invested in proper interest-bearing securities, will yield a sufficient income to enable them to pay to the plaintiff, Miss Harriott M. Lesesne, and to her sister, Mrs. Louise G. Logan, formerly Lesesne, the sum of $100 per month each, and the additional sum of $500 per annum in lieu of house rent; and that they report to F. K. Myers, Esq., one of the masters of this Court, the sales as made and the amounts received by them, and amounts invested and the net income yielded from said investments.

In the event that no such sales, or not sufficient sales, shall have been made prior to the 15th day of December, 1915, it is ordered that the said master do sell a sufficient amount of the real estate of the trust estate as set forth below which may then remain unsold, to provide a fund which, when properly invested, will with the proceeds of any sales made by him at private sale as hereinabove provided, if any, yield

a net income of $2,900; such sales to be made in the following order, unless otherwise agreed to by the master and the attorneys for the plaintiff and for the trustees: (1) The portion of the said boulevard lots which may have been set off to the said trust estate or of the undivided interest of the trust estate therein. (2) The lands at Newport, R. I., owned by the trust estate. (3) The lands in Berkeley and Dorchester counties belonging to the trust estate. (4) The undivided interest of the trust estate in the lands in Berkeley county.

It is further ordered, that all such sales at public auction by the master be at the usual place of sales in the county wherein said property is respectively situated, after the advertisement according to the laws of this State, in a newspaper published in the city of Charleston and also in a newspaper published in the county wherein the lands which may be offered for sale are situated, the said Newport, R. I., lands to be sold in the city and county of Charleston, but the sale thereof also to be advertised in some newspaper published in Newport, R. I., upon the following terms, to wit: One-third cash, balance in one and two years, secured by bond or bonds of the purchaser and mortgage of the premises sold, with interest from date of sale at 7 per cent., with all usual covenants, purchaser to have the privilege of paying all cash, the master to have the right to assign to the trustees any such bonds and mortgages, or to sell the same for cash for the face value thereof.

It is further ordered, that for the purpose of reimbursement for the loss in income during the period from March 6, 1910, to December 31, 1914, the entire net income of the trust estate be paid by the trustees to the plaintiff and her sister, Mrs. Louise G. Logan, defendant herein, during the lifetime of the life tenant, Miss Alice Middleton, or until they shall have received the sum of $8,155, being the difference between the sum received by them and what they should have received under the will of testatrix during the said

period. And in the event of the death of the life tenant before said sum is fully paid, then any balance remaining to be paid shall be a charge upon the interest of the said trustees in said estate.

It is further ordered, adjudged and decreed, that the case be referred to F. K. Myers, one of the masters of this Court, for the purpose of carrying out the terms of this decree, and for the further purpose of taking testimony as to the allegations of the sixth paragraph of the complaint with reference to the so-called "Planting Fund," and that he proceed to take testimony and report the testimony together with his findings of fact and conclusions of law thereon.

It is further ordered, that the trustees account to the master as to their actings and doings in connection with said trust estate during the period of their trusteeship.

It appears to the Court that it is unnecessary at this time to consider and determine the status of the interests of Weehaw and Nieuport plantations, inasmuch as the property of the estate herein ordered to be sold seems more than sufficient for the present; but if, upon the master's report of sales as herein provided, a deficiency appears, then the plaintiff, if so advised, apply for an order of reference.

It is further ordered, that any party to the cause may apply for such further orders as may be necessary for the purposes hereof on the footing of this decree.

*Messrs. Mitchell & Smith* and *J. P. K. Bryan,* for appellants, cite: *As to distinction between gift of net income and annuity:* 2 Cyc. 23; 53 N. Y. 479; 1 Words & Phrases 404. *Exercise of discretionary powers by trustees:* Perry Trusts, secs. 507 and 511; 2 Rich. Eq. 134; 1 Strob. Eq. 170-172; 12 Rich. Eq. 245, 254; 14 S. C. 229; 31 S. C. 183; 87 S. C. 342. *Power of sale:* 101 S. C. 1. *Only profits to be accounted for:* McMul. Eq. 385; 88 S. C. 252. *Error of judgment not negligence:* 182 Fed. Rep. 983; 27 Fed. 459-

464; 148 U. S. 615, 627; 14 S. C. 229; 8 Cranch. 94, 98; 3 How. 87-98; 100 S. C. 547, 548; 142 U. S. 288, 292.

*Messrs. Whaley, Barnwell & Grimball,* for respondent, cite: *As to construction of will:* 6 Pet. 68; 127 U. S. 309. *Control of discretionary power in trustees:* 2 Perry Trusts, secs. 508 and 511, 511a; 50 Fed. 854; 133 N. Y. S. 1906; 131 S. W. 393; 133 S. W. 546; 153 S. W. 840; 101 N. E. 184 and 516; 30 N. Y. S. 177; 91 N. C. 220; 48 S. C. 516. *Trustees were not entitled to commissions prior to 1872:* 13 Rich. Eq. 198. *Investments in stocks:* 1 Perry Trusts, pars. 453, 465. *Right of life tenant to income:* 183 Mass. 581; 89 N. Y. 169; 205 N. Y. 599; 115 Wis. 90; 7 Ves. 89; 2 Sim. & Sta. 386; 1 Hare 161; 61 Md. 575; 23 Beav. 469; 28 *Id.* 637; 63 N. Y. S. 395; 5 Redf. (N. Y.) 121; 68 N. Y. 239; and submit: 1. *It was the duty of the trustees to administer the estate for the benefit of the Misses Lesesne, the chief beneficiaries, according to the intention of the testatrix:* 16 N. Y. Misc. 245; 1 DeS. 521; 22 N. Y. App. Div. 428; 3 DeS. 190. 2. *It was the duty of the trustees to sell the real estate and the improper investments they received and to invest the proceeds in proper securities:* 1 Perry Trusts, secs. 453, 458, 465; 183 Mass. 581; 2 S. C. 239. 3. *It was the duty of the trustees not to manage the trust in such a way as to benefit themselves at the expense of the beneficiaries:* 1 Perry Trusts, par. 427; 3 S. C. Eq. (3 DeS.) 25. 4. *It was the duty of the trustees to earn an adequate income:* Pom. Eq. Juris. 1071; 9 S. C. 465; 1 S. C. 209. 5. *It was the duty of the trustees to exercise due care and sound judgment:* 103 S. C. 153; 151 N. Y. S. 768; 103 N. E. 148; 89 N. E. 100; 88 N. W. 256; 1 S. C. 399; 81 S. C. 511; 57 S. C. 42; 21 S. C. L. (3 Hill) 204.

*Messrs. Logan & Grace,* also for respondent, cite: Loring's Trustees' Handbook (3d ed.) 106.

September 30, 1016.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the reasons therein stated, the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and GAGE concur in the opinion of the Court.

MR. JUSTICE FRASER, *concurring.* I concur in the result in part.

1. Appellant complains that the Court erred in substituting its own discretion for the discretion of the trustees. This should not be sustained for the reason that the will directed the payment of $2,900 annually to the Misses Lesesne. That requirement was absolute and not a matter of discretion. The payment was not made.

The method of raising the necessary funds (the management of the property) was a matter of discretion. No authority has been cited (it is hard to conceive that there could be such authority) that holds that where the method of performing the primary intention of the will is discretionary, the trustee or executor could defeat the will by refusing to exercise his discretion. Here the legacies were not paid and the trustees cannot defeat them by means of a discretion as to method.

2. Again it is said the Court erred in requiring these trustees to pay, individually, these legacies, in the absence of fraud or gross mismanagement. The order made no such requirement. These trustees might not get as much for themselves if they pay the legacies, but under the order of the Court, the estate and not the trustees pay the legacies. Residuary legatees would always get more if specific legacies

were unpaid, but the estate of the testator pays the specific legacies and not residuary legatees. This judgment is against the estate and not against the trustees, individually. There is no provision of law that allows an executor or trustee to swell his own estate by failure to pay specific legacies. If the rule were otherwise, an executor or trustee who was also the remainderman (and so the ultimate beneficiary) could apply the entire income to the improvement of the estate while the life tenant (the primary beneficiary) is in want.

I think the Circuit Court did err in selecting the specific property for sale and fixing the order of sale. There is a present need of money to pay the beneficiaries and a present power of sale. I think the Court should order the trustees to exercise the power of sale, and that it shall be exercised at once. To that extent I think the Circuit decree should be modified. Besides this, a sale in South Carolina, of lands in New Jersey sold under an order of South Carolina Court, would, to say the least of it, give a doubtful title and probably result in loss. I think this provision also should be modified.

With these modifications, I think the decree should be affirmed.


MR. JUSTICE HYDRICK, *dissenting.* The time at my disposal forbids my attempting to discuss at length the issues of law and fact involved in this case, or to state in detail the reasons why I do not concur in affirming the judgment of the Circuit Court. The importance of the issues, however, requires me to state my reasons as briefly as possible.

While it is manifest that plaintiff and her sister were the prime objects of the affection and generosity of testatrix, it is equally clear from a consideration of the whole will that they were not the sole objects thereof. Testatrix evidently contemplated and intended that the trust estate should be so managed that, if reasonably practicable, each and every

bequest and devise should be fully satisfied. To that end she gave the trustees large power and discretion, which they were in duty bound to exercise, according to their best judgment, so as to carry out her intention, not only for the benefit of plaintiff and her sister, but also for all other legatees and devisees. Their duties were responsible and delicate; especially delicate, because they themselves were devisees of interests that were contingent upon the value of the estate at the death of the life tenant. And while full force and effect should always be given to the wise and wholesome rule that trustees may not so manage a trust estate as to make profit therefrom for themselves, yet the rule is not so unreasonable or exacting as to require them, where they are personally interested in the estate, to sacrifice their own personal interests for the benefit of other *cestui que trustent*. In such circumstances, reason and justice require no more of them than that they manage the estate just as ordinarily prudent trustees who are not personally interested would. If their management measures up to that standard, no one has the right to complain of it. Careful consideration of the management of this estate in the light of all the circumstances shows that it did not fall so far short of the requirements of the law as to merit the condemnation of the Court. While, in some things, our judgment may have differed from that of the trustees, yet we must not overlook the fact of vital importance that testatrix invoked their judgment, not ours, and that she gave them the power and discretion to act, and not us; and while the power of the Court to control trustees is unquestionable, it is well settled that it will not and should not do so, except when abuse of discretion is clearly made to appear. The fact and circumstances of this case fall far short of making out such a case. Some of their acts or omissions that have been most questioned and criticized have been abundantly justified by the actual results. We must not forget that it is often very difficult—sometimes impossible—to sell unproductive real estate, especially

in large bodies, without sacrificing it.    The very fact that
it is unproductive and requires the investment of large sums
of money often makes it unsalable.    Nor must we overlook
the fact that prior to the disastrous storm of August, 1911,
there appeared to be no reason or necessity to sell any of the
lands of the estate.    Up to that time, the management of the
estate seems to have been satisfactory to all parties in inter-
est.    Since then, it cannot be denied that financial and other
conditions in this State have made it exceedingly difficult
to dispose of large holdings of real estate at reasonably fair
prices.    Under all the circumstances, it would be unjust and
inequitable to make the trustees personally liable for the
deficiency in the income of the estate.    To say that, because
the Court ordered that it shall be paid out of their shares, it
is paid out of the estate, and not by them personally, is falla-
cious.    That would be true, if the Court had ordered it paid
out of that part of the estate which was not specifically
devised, but such is not the case.    As the life tenant has
died since the filing of the judgment below, the effect of the
judgment is to make the trustees personally liable for the
deficiency of the income; and the facts and circumstances
certainly do not warrant the Court in doing so.    The prac-
tical result will be that, notwithstanding plaintiff and her
sister will be greatly benefited by the failure of the trustees
to sell enough real estate to raise the desired income, they
will get all the benefit that has resulted from that failure in
the increased value of the real estate and the trustees will be
penalized for so managing the estate that the final result has
been beneficial rather than detrimental to them.    I am
unable to conceive how it can be said that such a result or
the conclusion by which it is reached is just and equitable.

Testatrix did not give plaintiff and her sister an annuity,
as the Circuit decree, not in fact, but in effect, holds.    She
gave them only the net income of the trust estate to the
amount of $2,900 per annum.    If she had intended to give
them $2,900 per annum, absolutely and at all events, it would

have been easy to have said so; and, no doubt, she would have said so, for her will was carefully prepared by able counsel. And, while the trustees were given power to sell and reinvest, it nevertheless appears from the will that testatrix contemplated and intended that the estate should be preserved so far as practicable to satisfy all her bequests and devises, and not alone those to plaintiff and her sister, and the trustees would have been subject to just criticism and complaint, if they had not reasonably endeavored to give practical effect to every provision of the will.

The Court below in effect substituted its judgment and discretion for that of the trustees, and erred in so doing. It erred also in making the trustees personally liable for the deficiency of the net income of the estate. That should be made up to the plaintiff and her sister out of that portion of the estate which was not specifically devised; or, if necessarily out of the specific devises, then in the order required by the will, the last bequest or devise being first exhausted and so on in turn. The Court erred also in taking the sales and the order thereof out of the hands of the trustees and putting them into the hands of the master.

The judgment should be modified accordingly.