. 10090 .

HUGUENIN *ET AL.* v. ADAMS *ET AL.*

(96 S. E. 918.)

1. DEEDS—FIDUCIARY RELATIONS—BURDEN OF PROOF.—When a relationship of trust and confidence is established between contracting parties, then, without reference to the infirmity of one of the parties, the other party, who has received a benefit by the transaction, must prove that the transaction was fair.

2. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS.—In an action to set aside a deed, an instruction requiring plaintiff to show that she was infirm, in order to throw the burden upon defendant to show good faith, was harmless, where defendant proved that the transaction was fair.

3. DEEDS—EXECUTION—MENTAL CAPACITY — PRESUMPTION. — Physician's testimony that plaintiff had a stroke of paralysis in 1906, "painful but not serious," was not sufficient to overcome the presumption that plaintiff had a disposing capacity sufficient to convey land in 1911.

4. DEEDS—EVIDENCE.—In an action to set aside a deed to one in a confidential relation, evidence *held* to show that the transaction was fair and not fraudulent.

5. EVIDENCE—PRESUMPTIONS—CONTENTS OF WILL.—In an action to set aside a deed, where defendant introduced in evidence a will, previously executed by plaintiff, devising the same land to him, to show that the transaction was fair, it will be presumed that plaintiff knew the contents of the will, unless the circumstances surrounding its execution cast doubt upon such knowledge.

6. Cancellation of Instruments—Pleading and Issues.—In an action to set aside a deed, where defendant answered that conveyance was absolute, but that "there were other valuable considerations" not expressed in the deed, testimony of defendant that he held the land under a parol trust, the same as expressed in a previously executed will, was within the allegations.

7. Deeds—Revocation.—A grantor cannot revoke his deed by later deed or will.

8. Trusts—Accounting—Compensation.—While the grantee in a deed, consideration for which was a parol agreement by grantee to give grantor the income from the land during her life, must account to grantor's estate for rents collected, he is entitled to compensation for overseeing the property.

9. Trusts—Accounting—Interest.—Regarding liability of trustee for interest, the only inflexible rule is that a trustee shall not make a profit out of a balance in his hands, and he shall not be charged with loss except for neglect of duty.

10. Trusts—Accounting—Interest.—A trustee of a large estate is not more liable for interest on the proceeds of sales of parcels of land than he is on rents and other money coming into his hands.

Before DeVore, J., Richland, April term, 1917.   Modified and affirmed.

Action in equity by Mary A. Huguenin and others against Julius H. Adams and another to set aside a deed.   Judgment for defendants, and plaintiffs appeal.

*Messrs. F. G. Tompkins* and *Green & Green,* attorneys for appellants, submit: *That while in cases for setting aside conveyances between parties bearing to each other a highly confidential or trust relations, there exists a well recognized distinction between undue influence actively exercised and cases where reliance is placed solely upon the existence of confidential or fiduciary relation between the parties, coupled with a transaction or conveyance from the weak party to the strong, who thereby procures valuable property for nothing or for a very nominal valuation, or there is deception and not the fullest and fairest dealings between the parties, yet such conveyances will be set aside whether the undue influence be actively exercised or arise by implication from the*

*relation of the parties and the character of the transaction:*
57 S. C. 413; 94 U. S. 506; 24 S. C. 1; 30 S. C. 473; 1
Story Eq. Jur., sec. 238; 61 S. C. 504; 2 Pom. Eq. Jur.,
secs. 955-956; 4 DeS. Ch. 684; 6 Ves. 266; 14 A. & E.
Ency. L., 2d Ed. 194; 87 S. C. 1-7; 5 Rich. Eq. 450; 53
Ala. 89. *As to the matter of the ginning and packing
account: it is submitted that there is no proper evidence
upon which to base the findings of the master or the Circuit
Judge as to these items, and that such items are not within
the terms of the agreement for compensation alleged in the
complaint and admitted by the answer:* 81 S. C. 506; 14 L.
R. A. (N. S.), p. 488, and note; 31 Cyc., p. 1474c; 57 S. C.
98; Bailey's Eq. 266. *An agent receiving money and not
applying it to the purposes specified in the agreement under
which he acts within a reasonable time, is chargeable with
interest:* 4 DeS. Eq. 111; 31 Cyc. 9, 1479g; Bailey Eq. 97;
57 S. C. 42; 42 S. C. 109; 58 S. C. 22; 3 Hill 204; 81 S. C.
511; Bailey Eq. 226.

*Messrs. Benet, McGowan & Shand,* for respondent, sub-
mit: *To reverse the decree, the Court must be convinced
that the trial Judge either committed error, or abused his
discretion:* 100 S. C. 331. *The master had the advantage
of seeing the witnesses face to face, and having so seen was
able to judge the testimony accurately:* 5 Strobhart 189 (36
S. C. L.). *Before the conveyance can be set aside on the
ground of undue influence it must be shown that the influ-
ence was such as was exerted upon the grantor at the moment
of the signing of the deed, and to be such as to render the
mind of the grantor incapable of understanding the nature
and circumstances of the act:* 115 Iowa, 91 Am. St. Rep.
158; 198 Pa. St. 236; 82 Am. St. Rep. 808; 48 Minn. 504;
31 Am. St. Rep. 655; 104 Mo. 201; 24 Am. St. Rep. 326;
90 S. C. 202; 13 Cyc. 285; 9 Cyc. 455; 64 S. C. 273; and
authorities there cited; 118 U. S. 127; 93 S. E. 129; 86
S. C. 491; 95 S. E. 329; 64 S. C. 256. *The undue influence
must have been actually exerted:* Pomeroy Eq. Jur., vol.

VI, sections 952-6; 61 S. C. 505; 16 S. C. 334. *The deed was founded upon a proper consideration:* 83 S. E. 131; 2 Hill Law 404; 44 S. C. 378; 64 S. C. 256; 93 S. C. 376; Rice's Chancery 243; Cheve's Eq. 148; 14 S. C. 475. *As to the rents of the Shiver place:* 100 S. C. 230. *Respondent could be charged with interest on annual balances in his hands only from the time of the demand for an accounting by Mrs. Huguenin:* Bailey's Eq. (8 S. C. Eq.) 226; 28 S. E. 782; 16 So. 873; 3 Atlantic 264 (N. J., 1885); 11 Daly 107 (N. Y.); 11 S. C. Eq. (2 Hill's) 158.

September 10, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action in equity to set aside a deed from Mrs. Mary A. Huguenin to Julius H. Adams, by which the grantor conveyed to the grantee 1,541 acres of land, confessedly worth nearly $50,000. The action was brought by Mrs. Huguenin, and with her was joined Dr. E. C. L. Adams, to whom she had made a deed of trust to the same land, in repudiation of the deed she had first made to Julius H. Adams. Mrs. Huguenin testified, but she died before the judgment of the Court was pronounced.

The master and the Circuit Court both found against the complainant, and so do we. Mrs. Huguenin was a lady of substance and of culture. Her only child had died in 1892, and her husband, Dr. Julius Huguenin, had died before that year. She resided upon her landed estate in lower Richland, and in the summer time she went to her house in the Sand Hills. After the death of her husband and her child her brother, Harry W. Adams, lived with her until he died in 1903;* and then her brother, Joel H. Adams, the father of Julius, lived with her 14 years and until he died in 1914 Then Julius, who was named for Dr. Huguenin, and whose

*Harry W. Adams never lived with Mrs. Huguenin. He managed her business for her, but lived some three miles away.—REPORTER.

mother was Dr. Huguenin's sister, took up his residence with Mrs. Huguenin and managed her estate. He was a young unmarried man. Mrs. Huguenin owned a large landed property, aggregating about 2,300 acres. In 1911, the year in which the deed to Julius was made, the grantor was 73 years old. In 1906 Mrs. Huguenin had suffered a slight stroke of paralysis from which she recovered, in 1912 she suffered a second stroke of a serious character, and in 1915 she died. Before 1911 she had executed three wills, one in 1896, one in 1903, and one in 1907, and after 1911 she made yet another will in 1915. Such is the general setting of the case.

There are 26 exceptions to the decree of the Circuit Court, of which 15 are to the major issue and 11 to the minor issues. The exceptions are redundant and argumentative. In the essence there are only two cardinal issues in the case—(1) the integrity of the deed, and (2) the correctness of the account betwixt Mrs. Huguenin and Julius for the years 1904-1915, both inclusive. The first is the major issue to be decided, and that which we now approach.

We shall compass the questions which are made by the appellants' printed argument rather than follow the exceptions *seriatim.* The appellants suggest at the outset a "fundamental error" of the Circuit Court in stating the rule of equity applicable to a case like this. The Court held this:

"My understanding of the rule in such cases is that when it is made to appear by the person seeking to set aside an instrument that the maker was feeble-minded, infirm, or illiterate, and that the person to whom the conveyance is made occupied towards the maker of the instrument a position of trust and confidence, the burden is then upon the person to whom the conveyance is made to show the utmost good faith in the transaction. In this case, then, the plaintiff should show, in the first instance, that she was feeble-minded, infirm, or illiterate at the time of the execution of the instrument; but the testimony in this case establishes the fact that

Mrs. Huguenin was never feeble-minded nor illiterate, and that she was not infirm until after the execution of this instrument."

That is hardly accurate.

The true rule is that when a relationship of trust and confidence is established betwixt the contracting parties—and such a friendship was admitted to exist in the instant case—then, without reference to the infirmity of one of the parties, the other party who has received a benefit by the transaction must prove that the transaction was fair. *Way v. Ins. Co.,* 61 S. C. 506, 39 S. E. 742.

But the Circuit Court went further, and held that, granting that Mrs. Huguenin was infirm, the defendant proved by a preponderance of the testimony that the transaction was fair. So any suggested error of the Court did not operate to injure the plaintiffs.

This brings us to review the issue of fact, was the transaction a fair one? The appellants state their contention in these words:

."In the present case (1) it is not contended by the plaintiff that false statements were made by the defendant as to the contents of the deed at the time of its execution, nor (2) that plaintiff relying upon these executed the deed, nor (3) that there was active physical coercion or intimidation or overbearing argument used; but the claim is made (a) that deception, just as actual and potent, and far more subtle, was used most successfully in securing the conveyance of 1,541 acres of plaintiff's lands to the defendant without consideration and without so much as the requirement from the defendant of a promise to take care of the plaintiff, or that she should have any rights whatever in the disposition of the lands so conveyed, in that (w) defendant led plaintiff to believe that she was to execute to him a paper giving him the management of her place and affairs, and not an absolute conveyance of her lands, and (x) that she was also to execute a deed which she had directed to be prepared, conveying

to her niece, defendant's sister, Mrs. Seay, a tract of land that she had determined to convey to her, and (y) in presenting to her and getting her to execute a deed conveying the lands to him as aforesaid, instead of the paper which she had assented to execute, (z) the plaintiff relying upon Mr. Adams to have the paper prepared in accordance with her wishes, and having full confidence in him, executing the same at his request and without reading."

The numerals and letters have been supplied.

The first, second and third noncontentions are admissions y the plaintiffs, and against them, that the defendant did not make to Mrs. Huguenin false statements as to the contents of the deed when the deed was executed; that Mrs. Huguenin did not then rely on any such then supposed false statements; that Julius did not coerce or argue Mrs. Huguenin into making the deed.

The contention is (a, w, x, y, z) that Julius had aforetime prepared the way by guile to secure an apparently willing execution of the deed that was made.

So that the specific inquiry is, What deception did Julius exercise before the deed was made?

Mrs. Huguenin's testimony is very short. She did not estify to a word or to an act of Julius which was calculated to deceive her, nor did she testify that he did deceive her. She did testify that she did not intend to convey the 1,541 acres. She further testified that she signed a paper, but did not know what it was, for she did not read it. She never testified to what she thought were the contents of the paper which she did sign. The appellant's printed brief charges that Mrs. Huguenin "thought she was giving him a paper authorizing him to manage and control her property." But there is no foundation in the testimony for that statement. There is a declaration to that effect by Mrs. Huguenin made at the house of Dr. Adams. A paper for that purpose was not necessary; and Julius had been in charge of the property for four years without any such paper. There is not a shred

of testimony tending to show that Julius suggested to Mrs. Huguenin at the signing that the paper was other than a deed; so much was admitted. Nor is there any such testimony which tends to show that Julius had aforetime made any suggestion of a paper "to manage and control the property." The witnesses for the plaintiffs, other than Mrs. Huguenin, testified only to circumstances which happened after the execution of the deed, and that testimony was chiefly about Mrs. Huguenin's indigent circumstances after 1907. Granting that such testimony is true, it only tends to show that Julius neglected to perform a plain duty; it does not necessarily tend to show that he deceived Mrs. Huguenin into signing the deed. But that testimony was strongly controverted, and that by the brother and sister of Mrs. Huguenin; so that the conclusion of the master and Circuit Court about Mrs. Huguenin's treatment by Julius is well supported by the testimony. So much of the plaintiff's proof on the issue of Julius' deception of Mrs. Huguenin before the deed was made.

The whole testimony, that for the plaintiff and that for the defendant, fails to show that in 1911 Mrs. Huguenin was incapable of executing a deed. Dr. Rivers, who testified for the plaintiff, said "she had a stroke of paralysis in 1906, painful but not serious." The presumption is that she had in 1911 a disposing capacity, and the proof must show the contrary, and it does not.

We come now to the testimony of the defendant, which shows that the transaction was fair, mindful that the burden is upon him to make that proof. There was, of course, no **obligation, legal or moral,** resting on Mrs. Huguenin to dispose of her property other than was suggested to her by her judgment, her bias, or her whim. She was an old lady, passed her allotted time of life, and she had to leave her estate to somebody, else the law would have done so much for her.

The following are all of the material circumstances of the case: The Shiver place, that in dispute, came to Mrs. Huguenin from Dr. Huguenin and not from the Adamses; Julius Adams was named for Dr. Huguenin, and he was Mrs. Huguenin's favorate nephew; he was selected by her to manage her affairs; Mrs. Huguenin had aforetime (1907) executed a will by which she left the Shiver place to Julius.

But the applicants challenge the last named circumstances. They say there is no proof that Mrs. Huguenin knew the contents of that will. So much will be presumed unless the circumstances surrounding the execution of the instrument cast doubt upon such knowledge. *Ex parte McKie,* 107 S. C. 72, 91 S. E. 978. There are no such circumstances proven in the instant case. Mr. Townsend's testimony establishes the draft of the will by him pursuant to instructions, presumably from the testatrix before she signed the instrument. The witnesses to the will all proved that Mrs. Huguenin signed the paper under normal conditions. The will was put by Julius into the custody of Mr. Ernest Kaminer and lodged in his safe and kept there for years. Mrs. Huguenin herself testified that Mr. Abney wrote the will of 1907. There is, therefore, no warrant for the appellants' statement that "from her testimony it appears she had no knowledge of any other will," referring to a will made before 1907. Mrs. Huguenin did testify that she did not thereby devise 1,541 acres to Julius; but the will speaks a different voice, and its integrity was not impaired. When the witness was asked on the cross-examination, if she had read the will over before she signed it, her only answer was that Julius stole the will. The witness never testified that she did not read the will nor that she was ignorant of its contents. We have not overlooked Mr. Abney's testimony; but we have no doubt but that the will of 1907 was prepared in his office upon instructions.

We come now to the deed of 1911, that which is the subject of issue. The appellant charges that the answer alleged

that the deed was "an absolute conveyance;" but "that when the defendant himself takes the stand he abandons the position that the deed was an absolute deed based on good consideration, and shows that it was made at his own suggestion, and now for the first time claims it was to carry out the purposes of the will of 1907."

The "case" does not sustain the charge. Therein the defendant alleged that there were other valuable considerations for the deed not expressed in it, and that the income from her property was only sufficient to meet her demands, and that the defendant was ready to account for his actings and doings. There is no suggestion in the answer that Mrs. Huguenin had no beneficial interest in the estate; the inference is plainly to the contrary. The testimony of the defendant that he held the land under a parol trust, the same as that expressed in the will of 1907, was manifestly within the allegations of the answer.

As before stated, the plaintiffs do not challenge that which took place at the execution of the deed. That Mrs. Huguenin really intended to make the deed that was made is manifest from her declarations and actions with reference to it for several years thereafter. She testified that she first learned of the existence and purport of the deed a "long time ago." She says she did not then mention the matter to Julius. Mrs. Crawford, a witness for the plaintiff, testified "everybody knew about it." Miss Amy Adams, sister to Mrs. Huguenin, testified that Mrs. Huguenin told her of the execution of the deed and the purport of it, though Mrs. Huguenin denied making such an admission. Mr. John Adams, brother of Mrs. Huguenin, testified that he talked to Mrs. Huguenin about the deed, in the presence of Dr. E. C. L. Adams and of Julius, and Mrs. Huguenin never denied that. The same witness further testified about a conversation with his sister touching the conveyance to Julius as follows:

"Q. Did she say she was agreeing to sell it? A. She said she divided it as she wanted it: Said, 'I did not sell it.' Q. She said she gave it to him to keep people from bothering her about it and divided it as she said? A. That is what I understood."

Mrs. Sallie Weston, a sister of Julius, testified about the same transaction as follows:

"Heard Miss Amy Adams speak to Mrs. Huguenin about the transfer, and Mrs. Huguenin said she had transferred it to Julius, and that Julius was to take care of her the rest of her life and dispose of it as she wanted it."

Mrs. Mary Seay, sister to Julius, also testified:

"She told me that very summer that she had that stroke that she wanted Julius to have the Shiver place; that he was named for her husband, and that he had worked for it, and she wanted him to have it. She told me that."

Mrs. Huguenin never denied what Julius testified to as her reason for her vesting the conveyance to him by deed instead of by will.

A letter written in January, 1912, by Mrs. Huguenin to the sweetheart of Julius is conclusive proof of the true relationship which then and had theretofore existed between the witness and Julius. In that letter, written in the serenity of her own soul, Mrs. Huguenin declared:

"He has always been a good friend to me besides being my nephew—has promised to take care of me as long as I live, which I can't expect to be much longer. I am glad he is going to be married. I hope he will be happy, as I think he deserves to be."

This is the language of sincere affection and of truth, and it is a plain repudiation by her of all that which the witnesses testified to about Julius' brutal neglect of his old aunt. Upon these grounds we sustain the deed in issue.

But the appellants contend that, even though the deed be held valid, yet the maker of it has revoked and annulled it

by her subsequent deed to E. C. L. Adams and by her will executed in 1915. (Exceptions 13, 14 and 15.) No authority is cited to sustain that postulate. A thing lawfully done cannot be undone in such fashion. It is true Mrs. Huguenin undertook, by deed and by will, to ignore the deed she had aforetime made to Julius H. Adams. How that came about it is not relevant to inquire. It is sufficient to say that her action to that end was abortive.

The last and minor issue concerns the account between Julius and the trust estate which the Circuit Court has stated. The account is for the years 1904-1915, both inclusive, and the Court finds a balance of $598.81 due to Julius. The master had made that balance $4,704.28. The numerous exceptions to the statement of the account by the Circuit Court have been summarized by the appellants under six heads, and we shall pursue these rather than the exceptions.

(1) The Court did not charge Julius with the rents for 1912, 1913, 1914 and 1915, and for the same years the Court did not allow Julius compensation for minding the property. The reason for that holding was that Julius had an absolute estate in the Shiver place, and he was, therefore, not liable to account for the rents of his own, nor was he for a like reason entitled to compensation for overseeing it. But Julius distinctly testified that he "does not lay claim to the rents from the Shiver place during Mrs. Huguenin's lifetime. She is perfectly welcome to use them during her lifetime." And again, "He was controlling it and was willing for her to get the benefit of it as long as she lived, which he intends to do." Therefore Julius must be charged with the rents for the four years named, and for sums collected in those years as compensation for ginning and packing cotton, and be credited with his services for overseeing in the same year. In this respect the decree is modified.

(2) The item of ginning and packing arises out of the operation on the Shiver place of a public gin, and the toll

receipts thereupon is the matter in dispute. The testimony thereabout is scant. There was no error in the Circuit decree to find that Julius was to get one-half the tolls from ginning and packing the cotton of the public. That business was not incident to the farming operations. Julius testified that the agreement betwixt him and Mrs. Huguenin was that he should get one-half, and there is no testimony to the contrary. The Circuit Court held that each party was entitled to have one-half the net proceeds of the receipts. But in ascertaining what was net the Court did not charge Julius with one-half the expenses incident to the ginning operation, to wit, the cost of bagging and ties. This expenditure was all charged to Mrs. Huguenin when one-half of it should have been charged to Julius. In this respect the decree is modified.

(3) The Court charged Mrs. Huguenin for the years 1909-1912, both inclusive, $150 per year for the four years for "supplies furnished by J. H. Adams." The aggregate item is $600. The respondents admit that this item is not evidenced by voucher or by book account, and that the amount is only estimated. Indeed, the defendant claimed before the master twice that sum, but the master allowed only $600 and the Court affirmed him. Neither the testimony of Julius H. Adams nor that of Mrs. Adams furnishes any sure or safe basis to estimate this charge, and it is disallowed.

(4) The Court declined to charge Julius with the price of a mare mule which he admits belonged to Mrs. Huguenin's estate and worth $200. The only excuse the defendant offered for retention of the mule was that Mrs. Huguenin had a mule of his. There is no testimony to show that the defendant was denied the possession of his own mule, or that his mule is of equal value with that of Mrs. Huguenin. Of course, his right to the mare mule is not thus established, and he must account to the estate for her.

(5) The Court failed to charge Julius with the 1912, 1913 and 1914 rents of the Jones place and the Whitehall place, estimated by the appellants at an aggregate sum for the four years of $1,388.25. The defendant testified that he "took charge of these with the lands," meaning the Shiver place. If the defendant collected the rents off Mrs. Huguenin's land other than the Shiver place, he ought to account to her estate for the same. There is no satisfactory proof that he got such rents or the value of them. Those issues are referred back to the Court to try.

(6) The Court did not charge Julius with interest on the annual balances against him. The account ran through 12 years, and for 5 of these years the balance was against the defendant, and for 7 of these years the balance was in the defendant's favor, and in neither event was interest charged on balance. The aggregate balance against the defendant was $4,858.63, and the aggregate balance in his favor was $5,072.78. There is no inflexible rule of law that a balance against a trustee at the end of the year shall bear interest the year following. Each case must depend upon the circumstances of it. The only inflexible rule is that the trustee shall not make a profit out of the balance in his hands, and that he shall not be charged with loss except for neglect of duty. *Tucker v. Richards,* 58 S. C. 27, 36 S. E. 3. The above statement of the running of the balance makes plain that the trustee made no profit out of the whole transaction of balances, and the situation will not be much altered by a restatement of the account. In this respect the decree is affirmed.

(7) The appellants contend that, in all events, the trustee should pay interest on $2,000, the proceeds of sale of Elm Savannah in 1905. The Court charged the trustee with the receipt of that sum in the statement of the account, the same as was charged the receipts of rents. There was no error in that. The trustee was in charge of the whole property, to rent and presumabily to sell; for the

*cestui que trust* had to make the deed of Elm Savannah to the purchaser, and she thereby ratified the sale by the trustee. No different sort of trust, under the circumstances, was impressed upon the sale money from that impressed on the rent money.

The judgment of the Circuit Court is affirmed, except in the matters of account herein stated, and in that respect it is modified.