In the Matter of the Estate of CATHERINE B. DRAKE, Deceased.

Surrogate's Court, Oneida County, July 27, 1934.

*Pratt & Fowler*, for the executrix.

*Earl B. Murray* [*J. Ruane* of counsel], for the objecting parties.

EVANS, S. This is a proceeding for a judicial settlement. Certain residuary legatees filed objections to the account because of loss incurred in not sooner disposing of securities owned by the estate. The testatrix died on March 31, 1930, leaving a last will and testament that was admitted to probate by this court on April 15, 1930. Mary Hudson was named as executrix and letters testamentary were duly issued to her. An inventory of the estate was taken on April 26, 1930, and shows an appraised value of $9,793.72.

With the exception of bank deposits amounting to about $1,000, a promissory note of $2,000 and several diamonds, her estate consisted of what is termed speculative securities. The will contained several specific gifts of diamonds and articles of household furnishings.

The executrix and the three objectors are entitled to four-sevenths of the residuary estate.

The administration of the estate appears to have proceeded with considerable speed to a certain point. Funeral expenses, debts, transfer tax and legacies were paid. Administration soon reached a stage where the question was presented as to the wisdom of selling or retaining the securities.

It appears that in the early part of June, 1930, the three objectors were at the residence of the executrix in Utica, N. Y., where they had spent the week end. On this occasion there was discussion concerning the securities and before leaving for their homes in Geneva, N. Y., the objectors executed and delivered to the executrix an instrument that reads as follows:

" We the undersigned, think it alright for Mary Hudson to use her judgment in regard to holding the stock of the Catherine B. Drake Estate.

" (Signed)        EVELYN B. LILLEY,
" MARY BARRON,
" MARGARET B. EIGHMEY."

It is to be noted that legatees owning three-sevenths of the residuary estate were not represented at this conference, viz., Josephine Barron, John Barron and children of John Murray who together owned his share of one-seventh.

As the law then read an estate was subject to a compulsory judicial settlement after the expiration of one year from the date of issuing letters testamentary. (Surr. Ct. Act, § 258.)

The liability of a representative of an estate is set forth as follows: " No profit shall be made by an executor, administrator, guardian or testamentary trustee by the increase, nor shall he sustain any loss by the decrease or loss, without his fault, of any part of the estate or fund; but he shall account for such increase, and be allowed for such decrease or loss on the settlement of his accounts." (Surr. Ct. Act, § 265.)

" Without his fault " means a common sense standard of prudence and proper diligence. (*Matter of Jarvis*, 110 Misc. 5.)

We have no difficult questions for the executrix to decide. A will may contain confusing directions as to the sale or retention of securities that may tax the judgment of an executor. In the case

at bar no criticism is leveled at the executrix for her failure to dispose of securities for a full year following the probate of the will by any person in interest. It appears to have been the unanimous belief of the residuary legatees that the market would improve. It seems equally clear that within a year they realized the futility of their hope and urged a judicial settlement of the estate.

A letter signed by the Murray children and written to the executrix in the early part of April, 1931, expresses their desire for an immediate sale of the stock. A letter the same month to one of the objectors by the executrix contains this paragraph: " While I have been advised to hold the stock for a while, everyone seemed to be in favor of selling now and things are so low now and there don't seem to be much change for the better so maybe it would be just as well."

It was the duty of the executrix to have a judicial settlement in this estate after April 15, 1931. If she desired to personally hold her own one-seventh of the securities that might easily have been arranged by a division on the accounting. (Surr. Ct. Act, § 268.)

The executrix apparently ignored her duty to account and postponed that function for nearly three years. There is evidence that the objectors terminated their authority for her to hold their stock. In any event the objectors could not bind other residuary legatees. It should be borne in mind by representatives of estates that the law fixes a time for a judicial settlement and compliance with its provisions will ordinarily exempt a representative from the difficulties shown here.

There is no requirement or justification for an executor or administrator to experiment with the securities in his custody long after the time to account has passed. Eliminating a period of one year from April 15, 1931, when an accounting should have been had, I think that the exercise of ordinary business prudence after that time would have avoided some of the loss that has been sustained. The evidence, I think, fairly establishes that the residuary legatees, with the exception of the executrix, desired a judicial settlement of the estate about April 15, 1931.

There appears to be no reasonable explanation why the executrix stubbornly refused to account or to sell the securities for a period of nearly three years. This delay was at her own risk.

Many of the securities that she held were of little or no value when she assumed the duties of executrix.

It appears by the testimony of the executrix that about two years ago she received an offer of seventeen dollars per share for

fifty shares of Schine Chain Theatres, which she refused. This offer should have been accepted and the value of this stock amounts to $850; 2,000 shares of Associated Laundry common stock was valued at least at twenty-five cents per share after April, 1931, and its value is fixed at $500; twenty-five shares of Blue Ridge Corporation common stock show at least a value of three dollars per share and its value is fixed at seventy-five dollars. The value of forty-three shares of American Insurance stock is shown to have been at least one dollar per share and its value is fixed at forty-three dollars. The total value of the stocks mentioned is $1,468. The amount accounted for by the executrix for the stock is $561.50, the difference being $906.50, for which amount the account should be surcharged.

Decreed accordingly.