14695

BEACHAM v. ROSS *ET AL.*

(197 S. E., 369)

400

*Mr. R. N. Ward,* for appellants,

*Messrs. Blythe & Bonham* and *R. E. Babb,* for respondents,

May 30, 1938.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The following facts are agreed to: On November 4, 1925, Mrs. Mary Ross Chipley died, leaving of force her last will and testament. She named Wm. G. Ross as executor of such will—which was probated in Richland County—and also appointed, in the event of the death of Wm. G. Ross or of his refusal to serve, T. W. Ross to act in that capacity; and further, in the event of the death of T. W. Ross or of his

refusal to accept the appointment, she named W. C. Beacham, the plaintiff herein, as such executor. Wm. G. Ross, who was predeceased by T. W. Ross, qualified on July 1, 1926, but died on the 20th of the following month. Four days later, August 24th, W. C. Beacham qualified, and has continued to serve ever since.

This action, the date of the commencement of which is an issue, was instituted in the Court of Common Pleas for Greenville County where a large part of the estate was located. All of the defendants, except four, were non-residents; and, with the exception of those named as trustees of the estate of Margaret Ross Pope, under the will of Demaris Ross, and E. V. Pope, as general guardian of Margaret Ross Pope, they were the legatees and devisees and heirs-at-law of Mary Ross Chipley, deceased. The summons was dated May 28, 1928; and an order of publication was obtained and filed in the office of the Clerk of Court, with a copy of the complaint, on July 14, 1928. Service was by mail and acceptances were made by the several defendants, beginning July 17, 1928, and up to and including August 3, 1928. It was asked in the complaint that certain real estate be sold, that the assets of the estate be marshaled, and that the plaintiff, as executor, be permitted in such action to render an accounting of his acts and doings, and that upon an accounting being had and approved, he be discharged from his trust. The cause was referred to the Master of Greenville County, and a decree authorizing the sale of the real estate was filed on March 9, 1929.

As no accounting had ever been made by the executor in the Probate Court, on October 12, 1936, Judge Bellinger issued a rule directing him to show cause why he should not be required to account in full. By his return thereto, he stated he was ready to make final settlement of the estate, and asked that the matter be referred to the Master to advertise for creditors. This was done by Judge Oxner on October 28, 1936, and a reference was held on December 3. The executor, however, did not have his accounting ready

at that time; and for the same reason other references set for later dates were continued; the proposed accounting, consolidated for the entire period, not being filed until April 9, 1937, and a detailed accounting, showing each year's receipts and disbursements separately, not until June 8, 1937. By consent, on June 14, an order was issued by which W. C. Beacham was individually made a party defendant, subject to any judgment which might be rendered against him.

The Master made his report on July 12, 1937, in which he found against the defendants, appellants here, on all questions raised by them. The report was excepted to and the matter was heard by his Honor, Judge Stoll, who sustained the Master in his findings and conclusions, except as to a typographical error with regard to the interest of Margaret Ross Pope. The question of additional fees for plaintiff's attorneys, which we are asked to consider, was not raised before the Master or before the Circuit Judge, it being mentioned for the first time in the circuit decree. We may add here that Messrs. Blythe & Bonham did not appear as counsel in the case until May, 1937.

While the exceptions are sixteen in number, only four questions are presented for decision. These we will consider in the order in which they are stated and argued by counsel.

First. "Is the executor entitled to any compensation? If so, what amount?"

Section 9012 of the Code of 1932 provides that "executors or administrators shall on the first day after the expiration of eleven (11) months from the date of his or their appointment and on the first day after the expiration of every twelve (12) months thereafter, render to the Judge of Probate of the county from whom they obtained letters testamentary or letters of administration a just and true account, upon oath, of the receipts and expenditures of such estate covering the preceding period," etc. It also provides that "if any executor or administrator should neglect to render such annual account, he shall not be entitled to any commis-

sions for his trouble in the management of the said estate."
*In re. Norris' Estate,* 153 S. C., 203, 150 S. E., 693.

The Circuit Judge held, confirming the findings of the Master, that the executor, as he had failed to file his first annual return in the Probate Court as required by law, was not entitled to any commissions on monies collected or disbursed by him the first year. He further held, however, that the present action was commenced in the Court of Common Pleas for Greenville County prior to July 24, 1928, the date on which the annual return for the second year was due to be filed; and that the Court of Common Pleas thereby acquired jurisdiction in the settlement of the estate, which it retained, and from that time on further returns were not required to be made in the Probate Court. He, therefore, decreed that the executor was entitled to commissions after July 24, 1927, as fixed by law. *Tompkins v. Tompkins,* 18 S. C., 1, 29.

Counsel for the appellants contends that Judge Stoll committed error (a) in holding that the present action was begun prior to July 24, 1928, as it "was not commenced until service of the summons on all defendants was completed August 3, 1928"; and (b) in not holding that "the executor should have accounted to the Probate Court up until the day the Court of Common Pleas assumed jurisdiction, whether that be a full or a portion of a return year."

We are not in accord with these contentions. As to (a), it is true that Section 427 of the Code of 1932 provides that "civil actions in the Courts of record of this State shall be commenced by service of a summons"; but it is also provided by Section 357, among other things, that "an action is commenced as to each defendant when the summons is served on him, or on a co-defendant, who is a joint contractor, or otherwise united in interest with him." Admittedly, the summons and complaint in the case at bar were served on a number of the defendants prior to July 24, 1928, the date when the second annual return of the executor

was due to be made in the Probate Court, if the matter of the administration of the estate had remained in that Court. It also appears that the complaining defendants were and are united in interest, being legatees and devisees under the will of Mrs. Chipley. It is clear, therefore, that service on one of them, as provided by Section 357, was a commencement of the action as to all, and gave to the Court of Common Pleas complete jurisdiction of all matters involved. Furthermore, as we have stated, an order of publication was obtained and filed in the office of the clerk of Court, with a copy of the complaint, on July 14, 1928. Section 441 of the Code provides that "from the time of the service of the summons in a civil action, or the allowance of a provisional remedy, the Court is deemed to have acquired jurisdiction, and to have control of all the subsequent procedeings." Under applicable law and the admitted facts, we think the trial Judge properly held that the action was commenced prior to July 24, 1928. As to (b), we know of no law, and none has been cited, which requires an executor to make a return in the Probate Court for the part of a year, after the Court of Common Pleas has acquired jurisdiction of the matter. And no good reason appears why he should be made to do so. We think that the holding in *Tompkins v. Tompkins, supra,* is to that effect. The exceptions, therefore, charging the circuit Judge with error in the respects named, are held to be without merit.

Second. "Should the executor individually be surcharged with interest on the annual balances?"

The following is stated in *Huguenin et al. v. Adams et al.,* 110 S. C., 407, 96 S. E., 918, 922: "There is no inflexible rule of law that a balance against a trustee at the end of the year shall bear interest the year following. Each case must depend upon the circumstances of it. The only inflexible rule is that the trustee shall not make a profit out of the balance in his hands, and that he shall not be charged with loss except for neglect of duty." And in *Nicholson v. Whitlock,* 57 S. C., 36, 35 S. E., 412, 414:

"The principle is well established that it is a matter of discretion with the Court, in the exercise of its equitable jurisdiction, whether it will allow interest against the administrator." See also *Dixon v. Hunter's Distributees,* 3 Hill, 204; *Pettus v. Clawson,* 4 Rich. Eq., 92; *Tompkins v. Tompkins,* 18 S. C., 1; *Glenn v. Worthy,* 169 S. C., 263, 168 S. E., 705.

The executor here is not charged by the appellants with any moral wrongdoing. The Master found, which is not questioned, that "he is a man of the highest character and long business experience, first as an official and for many years as president of Peoples National Bank." Our only inquiry, therefore, is whether he is chargeable with neglect of duty. We have read and reread with care the testimony contained in the record, and while the several reasons given by the executor for his failure to invest the annual balances, funds of the estate remaining in his hands over a period of time, were not such as a good business man might be expected to offer, it is conceded that the disbursements by him to the beneficiaries were made with reasonable promptness after receipt. Also, it is not disputed that conditions generally prevailing during the time, or at least a part of the time, that these balances were permitted by the executor to stay in the bank, affected, in a marked degree, the safety of investments. In short, that safe and satisfactory investments were not easily obtained. In view of these facts the Court, in the exercise of its discretion, concludes and holds that the executor should not be charged with interest on such balances.

This holding, however, does not apply to the estate of Margaret Ross Pope, a minor, which remained in the hands of the executor for a period of more than ten years as a general deposit in his bank. The excuse offered by the executor for holding her share for so long a time as a general deposit, is not at all satisfactory. He was charged with knowledge of the provisions of the will of Mrs. Chipley, and he knew that no one of the persons named by her as

trustees of Margaret Ross Pope, had qualified. In these circumstances, it was undoubtedly the duty of the executor to apply to the Court for instructions as to what should be done. Certainly, having failed to do that, he should have, in any event, deposited such funds in the savings department of his bank, a sound and going institution at all times, at the prevailing rates of interest over the period of time such funds were held. As Margaret Ross Pope was a minor, she cannot be charged with negligence in failing to have something done about it; and her rights should not be jeopardized by any lack of interest on the part of her relatives to act. The Court holds that the executor was negligent in the respects named and that, therefore, he must pay interest on the share of Margaret Ross Pope, at least, under the special circumstances here appearing, at the rates of interest paid by the savings department of the bank over a fixed period of time. *Anderson v. Silcox,* 82 S. C., 109, 116, 63 S. E., 128.

Third. "Should the executor individually be held responsible for losses due to the depreciation in the value of cotton mill stocks held by him from August 24, 1926, to February 10, 1937, before being liquidated, together with interest?"

We have given much thought and consideration to this question. According to the record, there came into the hands of the executor, as assets of the estate, the following: Twelve shares of Woodside Cotton Mill, common, having a face value of $1,200.00 and an appraised value of $1,440-.00; twelve shares of Woodside Cotton Mill, preferred, with a face value of $1,200.00 and an appraised value of $1,044-.00; four shares of American Spinning Company, face value $400.00 and appraised value $800.00; and thirty shares of F. W. Poe Mfg. Co., having a face value of $3,-000.00 and an appraised value of $3,180.00. The testimony of the witness Mills, which was not disputed, was to the effect that there was a ready market for these securities at good prices until 1929, inclusive, to wit: That the value of the Poe Mill common stock, from 1926 to 1929, was generally above par; that the value of the Woodside common

stock, for the same period, was well above par; and that of the Woodside preferred stock, during such time, just below par. The executor sold the four shares of American Spinning Company stock in March, 1927, for $1,300.00; and nine of the thirty shares of the Poe Company stock in June, 1927, for $1,156.50. He held, however, the other twenty-one shares of the Poe stock until February, 1937, at which time he sold them for $733.11. He also then disposed of the Woodside stock, both common and preferred, for $111-.76. As is seen, the executor held a large part of these securities for more than ten years, and until they had greatly depreciated in value, before he disposed of them. When questioned by counsel for the appellants about the matter, he offered no satisfactory reason for his failure to liquidate them within a reasonable time after they came into his possession. He did admit that something ought to have been done about it, and said that he did not know why it had not been done.

It is contended by his counsel, however, that he should be excused for failure to dispose of the mill stock before he did for the reason that the testatrix made these investments herself. We think, and it has been so held, that this fact will not justify his act in retaining such securities beyond a reasonable time for making a conversion. In *Lesesne v. Chaves,* 105 S. C., 432, 90 S. E., 37, it was held that a trustee should not invest trust property in stock, and that it seemed to the Court "that any cotton mill stock investments should be disposed of by the trustees at their earliest opportunity." (Page 38.) Furthermore, the will of Mrs. Chipley provided what disposition should be made of such assets by the executor, but which provisions he failed to fully carry out. He sold a portion of such securities, presumably by order of the Court, at a time when he was able to realize good prices therefor; and no good reason is made to appear why he could not have disposed of all of them at that time, or within a reasonable time, and in the same way. As stated in *Crayton v. Fowler,* 140 S. C., 517, 139

S. E., 161, "it is a general rule of law that when a trustee departs from the directions contained in the trust instrument he is liable for any loss occasioned, irrespective of good faith or his best judgment."

In the matter of *In re. Darke's Estate,* 152 Misc., 395, 274 N. Y. S., 198, the Court said (page 201) :

"There is no requirement or justification for an executor or administrator to experiment with the securities in his custody long after the time to account has passed. Eliminating a period of one year * * * when an accounting should have been had, I think that the exercise of ordinary business prudence after that time would have avoided some of the loss that has been sustained. * * *

"There appears to be no reasonable explanation why the executrix stubbornly refused to account or to sell the securities for a period of nearly three years."

In the case at bar, the executor had thirty-nine months after he came into posesssion of the stocks to dispose of them before the depression struck in October, 1929. After that time, these securities rapidly depreciated in value, and he having failed to sell them when he should have sold, found himself in a dilemma as to what should be done. He held on, however; and a loss was sustained by the estate; and as the testimony clearly indicates that such loss was due to the negligence of the executor, we hold that it is chargeable against him.

As said by Mr. Justice Bonham in *Winn v. Harby,* 171 S. C., 301, 172 S. E., 135, 141 : "There is no charge nor intimation of fraud or moral wrong against the defendants, who are men of high character and standing. The gravamen of the charge is that by their negligence and mismanagement of the trust committed to the Sumter Trust Company, of which they were the directors, charged with supervision over and direction of its affairs, they have occasioned loss to the estate. The conclusion is inescapable that the charge is sustained by the evidence."

410

Of course, an executor is entitled to a reasonable time ◼◼ for the conversion of stocks belonging to an estate and what would be reasonable in one case might not be in another. Courts of equity, therefore, will look to the facts and circumstances of each particular case. The Court below will be governed by this rule in determining the loss sustained by the appellants, and the case will be sent back to that Court for such determination, among other things.

Fourth. "Should the respondent's attorneys be paid by the executor from the funds of the estate?"

There is nothing here about which the appellants ◼ may properly complain. The questions for determination by the Master are these: Are plaintiff's attorneys entitled to additional fees? If so, what amount? Of course, the Master must necessarily, upon the hearing of these questions, give notice to all parties before the Court, the appellants included, who may appear and be heard in the matter, if they be so advised. This also applies to any other questions or matters to be heard and determined upon the remand of this case.

The judgment of the Circuit Court is modified in the respects herein named; and, as so modified, is affirmed. The case is remanded to the Circuit Court for further proceedings consistent with this opinion.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.