15910

WESTON v. WESTON *ET AL.*
(41 S. E. (2d) 372)

*Messrs. Herbert & Dial,* of Columbia, for Appellant, W. S. Weston, as Trustee, cite:

*Messrs. McKay & McKay,* of Columbia, for Appellant, Alma D. Weston, cite:

*Messrs. C. T. Graydon* and *John Grimball,* of Columbia, for Respondent, cite:

January 30, 1947.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous opinion of the Court.

T. I. Weston was separated and afterward divorced from his wife, Mrs. Alma D. Weston. A formal contract was entered into by them on July 8, 1932, which provided, among other things, that Mr. Weston should pay Mrs. Weston for

separate maintenance $150.00 on the first of each month, build her a home of limited cost and pay the taxes and insurance premiums on it. There was a provision for flexibility in the amount of the monthly payments which depended upon the possible fluctuation in Weston's income, and the amount was afterward increased to $172.50 per month. The present controversy arises largely out of the construction of the fourth paragraph of the agreement which is as follows:

"No. 4: The said T. I. Weston shall provide Ten Thousand Dollars ($10,000.00) of insurance and make such assignment to the Trustee holding the real estate as will protect the said Alma D. Weston in an income and annuity during her life, she to will any residue of such insurance to such persons as she may see fit, or the same to pass at her death to her legal heirs; and the said T. I. Weston further to assign to such Trustee one-half of the stock owned by him in the Weston & Brooker Company to be held by such Trustee during the life of the said T. I. Weston and after his death during the life of the said Alma D. Weston to insure the payments provided under this contract; the said stock, however, to be the property of the said T. I. Weston and to pass under his will or to his heirs when the trust herein provided is terminated."

Mr. Weston later executed an acknowledgment, dated July 8, 1940, which confirmed the foregoing agreement and in which he was joined by his brother and trustee, W. S. Weston, of which the now r e l e v a n t provisions are as follows:

"We further acknowledge that one-half of the stock owned by T. I. Weston in the Weston & Brooker Company is held by W. S. Weston as Trustee to insure the payments provided for under the aforesaid contract and in accordance with paragraph 4 of same.

"We further acknowledge that W. S. Weston as Trustee has in his possession two insurance policies, one being New York Life Insurance Company policy No. 6698608 for five

thousand dollars ($5,000.00) and the other being Mutual Life Insurance Company of New York policy No. 2422034 for five thousand dollars ($5,000.00) both policies being payable to Alma D. Weston under the terms of the agreement dated 8th July, 1932. There is no loan or debt against either of said policies and the premiums on same have been kept and will be kept up by T. I. Weston and no loan made against either of them without the written consent of the said Alma D. Weston."

Subsequently to the agreed separation and divorce from his first wife Mr. Weston married the plaintiff in this action, now respondent, Mrs. Blanche H. Weston, and died in November, 1940. He left a will dated a few months before, of which Mrs. Blanche H. Weston was executrix and W. S. Weston, executor. It purports to dispose of considerable other property but our present concern is only with testator's stockholdings in Weston & Brooker Company referred to in item IV of the will, which is as follows:

"ITEM IV: I am now the owner and holder of six hundred seventy-one (671) shares of the capital stock of the Weston & Brooker Company and I hereby give, devise and bequeath the same unto my brother, W. S. Weston, and in the event of his death to his son, W. S. Weston, Jr., in trust, nevertheless for the following uses and purposes:

"To hold such stock and vote the same, collect the income thereon and pay such part of the income from one-half thereof, to Alma D. Weston as may be necessary to comply with the terms and provisions of a certain contract by and between the said Alma D. Weston and T. I. Weston (there being two insurance policies the proceeds of which are to be used in complying with said contract and it is my intention that only such part of the income from the said Weston & Brooker stock shall be used to supplement the income from the said insurance policies as may be necessary to comply with the said contract). One-half of the balance of the income from the said stock but not less than the sum of

$200.00 per month, I hereby direct my trustees to pay over to my wife, Blanche H. Weston, during the term of her natural life, and the other one-half of the balance of said income my trustees shall pay over to my brother, W. S. Weston, or in the event of his death such income shall be paid to his children, share and share alike, and after the death of Alma D. Weston and subject to the charge thereon in favor of Mrs. Blanche H. Weston, I give, devise and bequeath the said stock unto my brother, W. S. Weston, in fee simple and forever, and in the event of his death prior to the termination of the two interests herein set forth, then to his children, share and share alike as soon as said interests terminate.

"With the power to my said trustee in his absolute discretion to sell and dispose of said stock or any part thereof at such time and for such price or prices as he may deem advisable and to invest and re-invest the proceeds upon the identical terms and provisions, and for the same uses and purposes as are herein made for the said stock. The income from such investments and the corpus of same to be distributed exactly as herein provided for the income and corpus of said stock."

Upon their returns, which we need not consider, the executor and executrix were discharged as such, as having fully performed their duties, and Letters Dismissory were issued by the Probate Court on September 22, 1943. This suit was brought by Mrs. Blanche H. Weston in August, 1944, against W. S. Weston as trustee under the will of her husband and upon his motion Mrs. Alma D. Weston was added as a defendant by order of the Court.

The complaint contains allegations of the foregoing transactions and that the trustee has in hand approximately $22,-000.00, cash proceeds of the trust created by item IV of the will of T. I. Weston, of which plaintiff is entitled to be paid one-half, less legal costs and commissions, which the trustee refused after demand, and has failed to pay her the stipulated $200.00 per month during the seven months pre-

ceeding the commencement of the action, with prayer for judgment for payment of the funds claimed.

The trustee answered that plaintiff had been paid more than the aggregate of $200.00 per month and upon her demand he had paid her all of the proceeds of the income from one-half of the shares of the stock, and now has in hand no funds from which to properly continue monthly payments of $200.00; that pursuant to the contract of 1932 between T. I. Weston and Mrs. Alma D. Weston, for the separate maintenance and support of the latter, the assignment by T. I. Weston to his brother, W. S. Weston, as trustee, was made of one-half of his stockholdings in Weston & Brooker Company, which assignment and trust were confirmed by the will of T. I. Weston, and that the answering defendant holds the funds referred to in the complaint as trustee under the terms of the contract and will and that plaintiff has no claim thereto during the lifetime of Mrs. Alma D. Weston, for the security of whose monthly payments the funds were held, which payments had been increased, with the consent of the plaintiff, in former litigation, to $172.50 per month; and that Mrs. Alma D. Weston is a proper and necessary party to the action.

The latter was added as a defendant by the Court, as has been mentioned, and she answered similarly to the trustee, and that she is an invalid, dependent for support upon the monthly payments and then alleged (but offered no supporting evidence at the trial) as follows: "The Weston & Brooker Company is a private corporation and the stock has no sale on the open market; that the value of the stock is dependent almost entirely upon the efficiency of its management and the proper operation of its business, which consists of the quarrying and crushing of stone; that obviously its quarry holdings are being continuously diminished and that its efficient operation is largely dependent upon the continued management of W. S. Weston; that in view of the continued diminution of the holdings referred to, the uncertainties of life and of the economic conditions, in order to insure the car-

rying out of the agreement for the maintenance of this defendant, it is necessary that the Trustee exercise his right and discretion to hold intact the shares of stock and the dividends therefrom in order to perform the responsibilities of his trust and to preserve the rights of this defendant to maintenance and livelihood under the agreement referred to".

The testimony was taken by the Master, upon which the case was heard and decided by the Court and upon a stipulation that Mrs. Alma D. Weston was in November, 1945, sixty years old and Mrs. Blanche H. Weston fifty-one, and the former an invalid, confined to her bed and rolling chair; further that the policies of insurance upon the life of T. I. Weston which were payable to Mrs. Blanche H. Weston were surrendered to the companies which thereupon agreed to pay her life annuities aggregating $920.00. The latter is immaterial in the present controversy and there is found in the record no evidence of the insurance annuity or annuities accruing to Mrs. Alma D. Weston, although it appears that she receives some such fixed sum which is applied on her monthly contract amount of $172.50, so from the dividends she receives some lesser amount which makes up the total of $172.50. Necessary in addition, however, to be paid on her account by the trustee are property taxes and insurance premiums.

It was decided by the Circuit Court that the trustee is not authorized to impound the income from the one-half of the corporate stock which he holds to guarantee the monthly payments to Mrs. Alma D. Weston, but he must distribute the surplus income in equal moieties to Mrs. Blanche H. Weston and (himself) W. S. Weston, after meeting the monthly installments of $172.50 to Mrs. Alma D. Weston. It was further held that the means of the payments to Mrs. Alma D. Weston are not limited to the insurance policies and the shares of stock, but they are a liability of his whole estate; that the insurance and corporate shares are a buffer to protect the other assets and insure the payments, but if the income is at any time not equal to the requirements, Mrs.

Alma D. Weston can resort to the principal or corpus of the insurance, the "trusteed" moiety of the stock, and even to the other moiety of the stock, and thereafter to any assets of the estate in the hands of the distributees, despite the prior distribution and discharge of the executors. For the latter, the authority of *Columbia Theological Seminary v. Arnette,* 168 S. C. 272, 167 S. E. 465, was cited and it was said that the contract of maintenance and support of Mrs. Alma D. Weston was a continuing lien on the entire estate of T. I. Weston. On this ground it was held that there is no necessity for the trustee to impound the excess of the dividends paid on the "trusteed" stock.

It was next held that the trustee, W. S. Weston, must pay Mrs. Blanche H. Weston at least $200.00 per month regardless of whether the stock which secures her earns that much, for which resort may be had to sale of the stock itself, if the dividends upon it are insufficient. It was further held that the impounding of the proceeds of the dividends was improper because not directed in the will and likewise no limitation therein upon the monthly income payments to Mrs. Blanche H. Weston. The decree was concluded with the following: "Nothing that has here been said would or could impair the obligation to Alma D. Weston. To enforce her contract she can resort to any property that T. I. Weston left at the time of his death".

It was thereupon ordered that W. S. Weston distribute to Mrs. Blanche H. Weston one-half of the fund accumulated from the income from the one-half of the stock of T. I. Weston, deceased, in Weston & Brooker Company, which he holds to guarantee the monthly payments to Mrs. Alma D. Weston of $172.50 and "that he cease impounding the dividends from this stock any longer than it takes to make certain that Alma D. Weston has received $172.50 (per month) for the period up to the declaring of the dividend". It was further ordered that W. S. Weston, as executor and trustee, pay Mrs. Blanche H. Weston $1,400.00, due her under the will of T. I. Weston and unpaid for seven months

(presumably up to the time of the commencement of the action). The executor and trustee was further directed that he is not authorized to impound the income which was ordered to be paid immediately to Blanche H. Weston and W. S. Weston "without a charge to Alma D. Weston, and pay Blanche H. Weston her share at the rate of $200.00 per month. He must pay Blanche H. Weston her share as it accrues".

Both defendants appealed and have filed separate briefs. There are many exceptions which appellants have epitomized in fewer questions, substantially as follows: Did not the separation agreement pledge one-half of T. I. Weston's stock in Weston & Brooker Company to insure the payments thereunder, and did not the pledge extend to the dividends upon the stock? Was it not the intention of the testator that none of the stock be sold to satisfy the requirements of his contract or will? Did not the testator intend to vest his trustee with discretion with respect to distribution of the dividends, except that the contract terms must be met and Mrs. Blanche H. Weston paid at least $200.00 per month, so that the court erred in decreeing immediate distribution at the time of payment of all dividends, if the contract payments were then met? May the provisions of the will be permitted to impair the stock security pledged to the payments provided by the separation contract? What is the intention manifested by the will? And, what discretion is vested in the trustee?

The second question stated in the foregoing summary need not be answered in this litigation. No prospect appears in the record of any early necessity for the sale of any of the shares of stock to meet the requirements of the payments to and for Mrs. Alma D. Weston or Mrs. Blanche H. Weston under the contract and the will. It will need to be decided whether resort can thus be had to the corpus of the fund if and when the at least apparent necessity arises and application is made to the court. It is likewise with respect to the liability of the other assets of the estate of T. I. Weston. It is unnecessary, and therefore improper, to decide such

issues now. Therefore, the decree under appeal is modified to that extent; it is reversed in its holdings in these respects. Moreover, all of the parties necessary to such adjudications are not before the court in this action. It does not appear that W. S. Weston even is a defendant in his individual capacity.

The other questions which we have stated will be answered to the extent necessary for decision of the issues made between the parties by the pleadings but they will not be discussed separately.

Undoubtedly the intentions of the testator must be ascertained insofar as is possible from the terms of the will; and likewise the intentions of the parties to the contract of separation must be determined; and these intentions must be effectuated by the court. The enforcement and administration of trusts has long been peculiarly within the jurisdiction of courts of equity which are jealous of the rights of *cestuis que trustent*. *Epworth Orphanage v. Long*, 199 S. C. 385, 19 S. E. (2d) 481.

It is plain that T. I. Weston's obligation under his contract for the separate support of his first wife could not be impaired by the terms of his will. Nor will the contents of the latter be permitted to infringe upon the obligations of the contract or impeach the evidence of it. *All v. Prillaman*, 200 S. C. 279, 20 S. E. (2d) 741, 159 A. L. R. 981. To the credit of Mr. Weston it should be said that he apparently had no such unworthy intentions. Indeed, he expressly confirmed the former contract by instrument dated July 8, 1940, which was shortly after the execution of his will on May 18, 1940; and the latter contained substantiating references to the contract. The presently pertinent parts of these documents are set out above.

Consideration of the separation contract leads to the conclusion that it was the intention of the parties that one-half of T. I. Weston's stock in Weston & Brooker Company should be assigned to the trustee, who was W. S. Weston, to hold for the life of Mrs. Alma D. Weston only

for the purpose of assuring the payments to and for her account which were stipulated in the contract, the words of it being "to insure the payments provided under this contract". Subjoined to this contract provision, separated only. by a semicolon, is the following: "the said stock, however, to be the property of the said T. I. Weston and to pass under his will or to his heirs when the trust herein provided is terminated". It is seen that there was no absolute transfer of title to the shares and likewise there was not a pledge in the ordinary legal sense. However, the stock was constituted a continuing guaranty of the payments by T. I. Weston during his life and similarly afterward, during the life of Mrs. Weston should she survive. Thus we think inapplicable the authority of the statement in the opinion in *Maxwell v. Bank,* 70 S. C. 532, 50 S. E. 195, cited by appellants, to the effect that to the pledgee of corporate stock belongs the dividends, as further security for payment of the debt. See also in this connection, 41 Am. Jur. 608.

Next in order of time came the will of Mr. Weston in which he recited that he was the owner of the shares of stock which he thereby bequeathed to his brother, W. S. Weston, to hold and vote them, collect the income therefrom and pay the necessary part of the income from one-half of the shares to Mrs. Alma D. Weston to comply with his obligations under the separation contract, using first therefor the proceeds of the life insurance policies. It was repeated in effect, apparently for emphasis and clarity, that the income from the stock should be so used only to the extent necessary to supplement the income from the insurance, in order to meet the demands of the contract. The trustee was then directed to dispose of the balance of the income from the testator's entire stockholdings by. division thereof equally between himself and Mrs. Blanche H. Weston, with the possibly important qualification that she should receive not less than $200-.00 per month. There were now unimportant further dispositions of the stock after the respective deaths of the two Mrs. Westons and of W. S. Weston.

Finally Mr. Weston and his brother and trustee, W. S. Weston, executed the acknowledgment of July 8, 1940, which recited with reference to the stock of T. I. Weston in Weston & Brooker Company that one-half of such as was so owned was held by the trustee "to insure the payments provided for under the aforesaid contract and in accordance with paragraph IV of same".

The reasoning of the trial court was, as has been mentioned, that the obligations of T. I. Weston under the separation contract were such that his whole estate was and is liable for them (which we leave now undecided) and for that reason the dividends from the stock should be disbursed by the trustee pursuant to the terms of the will as fast as received by him, after discharge of the accrued payments due Mrs. Alma D. Weston. On the other hand, the contention of appellants is that because of possible need of the dividends for future payments to this Mrs. Weston, none of the income from one-half of the stock should be disbursed during her lifetime, except to meet the contract payments to her. These are widely divergent views and we think the proper and equitable course lies somewhere betwen them.

Appellants have earnestly argued the general principle that a testator may do as he pleases with his property and may appoint his own agent or agents to carry out his will and when the latter violates no law it is a usurpation of power, infringing upon the stated right for a court to undertake to change or modify the plans of the testator, as expressed in his will; in support of this they cite *Society v. Noble,* 11 Rich. Eq. 156; *Jennings v. Teague,* 14 S. C. 229; *Anderson v. Butler,* 31 S. C. 183, 9 S. E. 797; *Rice v. Coleman,* 87 S. C. 342, 69 S. E. 516; and *Daniel v. Strong,* 185 S. C. 27, 192 S. E. 641. (But compare *Lesesne v. Cheves,* 105 S. C. 432, 90 S. E. 37; *Hendley v. Payne,* 200 S. C. 31, 20 S. E. (2d) 401; and *Wingard v. Hennessee,* 206 S. C. 159, 33 S. E. (2d) 390.)

There can be no quarrel with this general statement of the law, but it may be modified in application by the circumstances of a particular trust when the para-

mount interest of the *cestui* is given proper force. Not infrequently an emergency arises when the interest of the *cestui* would be sacrificed or his situation worsened upon the following of the letter of the terms of the trust, whereby the beneficent purpose of the trustor would be defeated. In such and similar cases the court of equity will intervene, upon proper application, and act for the proven interest of the *cestui*. The problem is well discussed in part 1 of volume 3 of Bogert's Trusts and Trustees, section 560, page 477 *et seq*. In summary of his review of the modern authorities the author says at page 488: "It is apparent from the preceding discussion that equity is prepared to assert such control over discretionary powers as is necessary to prevent the frustration of the fundamental intent of the settler, which is the conferring of a greater or less benefit on the *cestui*. The amount of this benefit which the settler contemplated is that to be fixed by the trustee through the use of reason, after an examination of relevant facts, and with the interest of the *cestui* in mind. If the trustee determines the size of the *cestui's* benefit with the intent of advancing his (the trustee's) own interests or those of a third person, or out of ill will or prejudice against the *cestui,* or without examining into the facts and basing his decision on any evidence, or if the trustee refuses to use his discretion at all, the *cestui* is not receiving that which the settler intended him to have, and the court should and does interfere and award to the *cestui* as nearly as possible that which the settler contemplated was to be the benefit he was to obtain from the trust".

*Keating v. Keating,* 182 Iowa 1056, 165 N. W. 74, is enlightening with respect to an express provision of the trust document that the court shall never interfere, an extreme case, where it was said: "We think it equally true that no trust has been or can be created in property where the discretion of the trustee is so broad or illimitable that equity will not entertain a complaint by the beneficiary that the trust has been or is being abused, or that the property is being wrongfully diverted to the destruction or defeat of the

purpose for which the founder established it. \* \* \* And we think if the devise in this case were to be constructed in accordance with the defendant's theory as being intended to give him absolute and uncontrolled discretion independent of any authority in the court to control its arbitrary exercise, it would have to be held, to that extent, void".

In *Hoyer v. Bullock,* 210 N. C. 321, 186 S. E. 356, the lower court held that the trust instrument, a holographic will, provided that the estate should be managed in the unrestrained exercise of the discretion of the trustee but this was reversed on appeal in a learned opinion by Chief Justice Stacy who said that the trust, like others, was "subject to the control of the court at all times". It was decided in *Taylor v. McClave,* 128 N. J. Eq. 109, 15 A. (2d) 213, that where trustees are given authority to construe a will creating a trust, and the settler provides that their decision shall be final, all decisions are subject to review by the court of equity and it has power to decide that the construction by the trustees is erroneous; and that the settler cannot deprive the court of its jurisdiction to construe trust instruments.

In the case at bar the contract and will, which both relate to the trust and together provide its terms, contain implications of discretion in the trustee which must be reasonably and faithfully exercised in the interests of the *cestuis* and when there is conflict between them, as here presented, there must be an accommodation of the clashing interests to the end that the rights of neither will be encroached upon. To enforce this, the court of equity has plenary jurisdiction. It is unusual in South Carolina, where divorces are not granted (Const. 1895, Art. XVII, Sec. 3), that our court should have to interpret and administer a trust which was created to provide support for two widows of one deceased, but the jurisdiction of the court is nevertheless ample to deal with such a problem, as witness this case.

The creator of every trust is irrebuttably presumed to know the applicable law and an intention to avoid it, however plainly expressed, will fall before it. Like

any contract, the pertinent provisions of the governing law become a part of a trust, as if written into it. In this light, an apparent conflict between the terms of a trust instrument and the powers of equity thereover is seen not to be real.

Reverting to the facts before us: The trustee occupies a strategic position with respect to the management of the corporation, upon whose stock-value and dividend payments the appellant *cestui que* trust now depends. He holds 671 shares of the corporation which were formerly the property of the testator and the record does not disclose the extent of his personal or other holdings. He testified that there are outstanding of the stock about 2,700 shares of the par value of $100.00 each. It appears that he is at least important and influential in the management of the affairs of the corporation, or can and should be so, in order to discharge the responsibilities of his trust. He explained his belief in the necessity or advisability of his course in impounding the entire dividends from one-half of the stock of his testator by his testimony that he knew from past experience that there is no certainty of annual dividends and that there will be some years without dividends. We are impressed that this is a conscientious and prudent view, but the result of fully following it thus far shows that it is unnecessarily extreme and, we think, infringes upon the rights of respondent. The corporation's recent history is one of high, though somewhat dwindling, dividends. In late 1940 10% was paid, aggregating on the whole 671 shares $6,710; in 1941, 25%, $16,775; in 1942, 57%, $38,247; in 1943, 15%, $10,065; in 1944, 5%, $3,355; and in 1945, 10%, $6,710. Thus the total of the dividends during the period covered by the accounts in the record, from November 22, 1940, to December 31, 1945, was $81,862, one-half of which was subject to the trust in favor of Mrs. Alma D. Weston. There was in hand undistributed on Dec. 31, 1945, $20,072.78, which included some interest on investments of income.

> From all the foregoing it appears, and we conclude, that the lower court erred when it ordered total disbursement of the income as received, after payment

to the date of disbursement of the current obligations to Mrs. Alma D. Weston under her contract; but we think that there is no doubt that the other extreme course which the trustee has pursued is also mistaken and is in violation of the rights of Mrs. Blanche H. Weston under the will. We are constrained to hold that the trial court should have directed that the trustee, from his knowledge and experience as such and as the holder and voter of a very substantial percentage of the shares of the Weston & Brooker Company, carefully estimate his dividend prospect and hold undistributed of the trust income only a sum reasonably sufficient to meet the balance of the requirements of not more than two future years of the contract obligations, taking into account the probable insurance income, and then disburse the balance of income in hand pursuant to the terms of the will. In this manner the trustee will always have a reserve or backlog probably equal to the sum of two years liabilities to Mrs. Alma D. Weston, which should assure regularity of the contract payments to her; and at the same time will permit Mrs. Blanche H. Weston to immediately enjoy the most of her portion of the income as it accrues, which seems to us to accord with the intention of the testator.

This need not be a permanent, inflexible rule in the management of the trust and disbursement of the income for the court of equity is open to the application of the trustee or any party in interest, in a proper proceeding to which all others interested are parties, for modification and further direction, in the event of changed circumstances. It is the ever-present duty of the trustee in voting the shares of stock, and however else he may participate in the management of the corporation, to act in the interests of the *cestuis que* trust, and his conduct thereabout must successfully meet the tests of absolute good faith and reasonable care and prudence.

The decree of the circuit court is modified as is hereinabove set forth.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Taylor and Oxner concur.